## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARYANN SAHOURY, individually, and as                  :
guardian ad litem, for A.S.,                                Case No. 2:11 Civ 05180 (KSH) (PS)

                       :

Plaintiffs,                                                 Motion Date: January 3, 2012

                       :

     v.                                                   Oral Argument Requested

                       :

MEREDITH CORPORATION, MEREDITH                         :
VIDEO STUDIOS and PARENT TV,                           :

               Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED COMPLAINT

---

Law Offices of Jennifer A. Klear
445 Park Avenue, 9th floor
New York, New York 10022
(212) 579-5943
jklear@klearlawfirm.com

*Attorney for Defendants
Meredith Corporation, Meredith
Video Studios, and Parents TV*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES................................................................................iii

I.      PRELIMINARY STATEMENT.................................................................1

II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND .....................2

        A.      The Parties.................................................................................2

        B.      The Video ..................................................................................2

        C.      The Unforeseeable Internet Theft of the Video.........................4

        D.      The Amended Complaint and Second Amended Complaint ................5

III.    LEGAL DISCUSSION ...........................................................................6

        A.      Motion to Dismiss Standard.......................................................6

        B.      Plaintiffs' Claims for Fraud and Misrepresentation Fail Because it is
                Unreasonable and Unjustifiable for Plaintiffs to Rely on Prior Oral Statements
                that Contradict their Subsequent Written Contract.................................7

        C.      Plaintiffs' Breach of Contract Claim Fails As A Matter of Law Because
                There Has Been No Breach..................................................................11

        D.      As a Matter of Law, Plaintiffs' Negligence and Negligent Infliction of
                Emotional Distress Claims Must Be Dismissed Where Meredith Had
                No Duty of Law.................................................................................12

        E.      Plaintiffs' Misappropriation Claim Must Fail Because Plaintiff's
                Likeness Was Not Used for Trade Purposes and the Video at
                Issue is an Expressive Work Fully Protected by the First Amendment ..............19

                1.      New Jersey's Right of Publicity Law Requires a
                        Commercial Exploitation of Plaintiff's Name or Likeness.........................19

                2.      The First Amendment Bars Plaintiffs' Misappropriation Claim.................24

                        a.      The *Breastfeeding Help* Video Constitutes Expressive
                                Speech That Is Fully Protected By the First Amendment ...........25

       b.     Under the *Rogers* Test, the First Amendment Bars Plaintiffs' Misappropriation Claim ................................................ 26

   F.    Plaintiffs' Fraud and Tort Claims are Barred by the Economic Loss Doctrine ......................................................................................... 28

IV.   CONCLUSION ......................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*75 Spruce St., L.L.C. v. New Jersey State Bd. of Educ.,*
    382 N.J. Super. 567 (Ch. Div. 2005)...........................................................................13

*Alloway v. Bradlees, Inc.,*
    157 N.J. 221(1999)...............................................................................................12, 13

*Ames v. U.S. Postal Serv.,*
    CIV. 05-4429 (JBS), 2005 WL 3536202 (D.N.J. Dec. 21, 2005) ...................................10

*Andrea v. Metropolitan Life Ins. Co.,*
    2000 WL 35361960 (D.N.J. 2000)...................................................................................8

*Arcand v. Brother Int'l Corp.,*
    673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................................6, 8, 9

*Ashcroft v. Iqbal,*
    --- U.S. ----, 129 S.Ct. 1937 (2009) ................................................................................6

*Associated Film Distribution Corp. v. Thornburgh,*
    683 F.2d 808 (3d Cir. 1982) ...........................................................................................25

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,*
    226 F. Supp. 2d 557 (D.N.J. 2002) ................................................................................29

*Canessa v. J. I. Kislak, Inc.*
    97 N.J. Super. 327 (Ch. Div. 1967)................................................................................23

*Caroll v. Cellco P'ship,*
    313 N.J.Super. 488 (App. Div. 1998) ..............................................................................7

*Cast Arts Inds., LLC v. KPMG LLP,*
    416 N.J. Super. 76 (App. Div. 2010) ..............................................................................15

*Castro v. NYT Television,*
    370 N.J. Super. 282 (App. Div. 2004) ...............................................................20, 21, 26

*Champion ex rel. Ezzo v. Dunfee,*
    398 N.J. Super. 112 (App. Div. 2008)..............................................................................14

*Chen v. HD Dimension, Corp.,*
    CIV.A. 10-863 FLW, 2010 WL 4721514 (D.N.J. Nov. 15, 2010) ............................29-30

*City of Orange Twp. v. Empire Mortg. Servs., Inc.,*
    341 N.J. Super. 216 (App. Div. 2001)...................................................................9

*Clement v. Consol. Rail Corp.,*
    130 F.R.D. 530 (D.N.J. 1990) .......................................................................15

*Clohesy v. Food Circus Supermarkets, Inc.,*
    149 N.J. 496 (1997) ...............................................................................12, 13

*Cole v. Laughrey Funeral Home,*
    376 N.J. Super. 135 (App. Div. 2005)...........................................................12, 13

*Comedy III Productions, Inc. v. Gary Saderup, Inc.,*
    25 Cal. 4th 387, 21 P.3d 797 (2001) ...........................................................24, 27

*Cooper v. Borough of Wenonah,*
    977 F. Supp. 305 (D.N.J. 1997) .....................................................................7

*Coyle v. Englander's,*
    199 N.J.Super. 212 (1985) ..........................................................................12

*Decker v. Princeton Packet, Inc.,*
    116 N.J. 418 (1989) ...............................................................................12, 13

*Doe v. MySpace, Inc.,*
    474 F. Supp. 2d 843 (W.D. Tex. 2007) .........................................................16, 17

*Domanske v. Rapid–American Corp.,*
    330 N.J.Super. 241 (App. Div. 2000).................................................................7

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
    66 F.3d 604  (3d Cir.1995) .........................................................................28

*Emerson Radio Corp. v. Orion Sales, Inc.,*
    No. Civ. A. 95-6455, 2000 WL 49361 (D.N.J .2000)) ...........................................29

*Estate of Elkerson v. N. Jersey Blood Ctr.,*
    342 N.J.Super. 219 (App. Div. 2001) .............................................................15

*ETW Corp. v. Jireh Pub., Inc.,*
    332 F.3d 915 (6th Cir. 2003) .......................................................................26

*Faber v. Condecor, Inc.,*
    195 N.J.Super. 81 (App. Div. 1984) ...........................................................20, 23

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007 (3d Cir. 2008) ........................................................... 24-25, 26

*Filmlife, Inc. v. Mal "Z" Ena, Inc.,*
    251 N.J.Super. 570 (App. Div. 1991) .......................................................... 9

*Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.,*
    913 F. Supp. 837 (D.N.J. 1995)     ........................................... 7, 8

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,*
    421 F. Supp. 2d 831 (D.N.J. 2006) ............................................................ 12

*Foodtown v. Sigma Mktg. Sys., Inc.,*
    518 F.Supp. 485 (D.N.J. 1980).................................................................. 28

*Foont-Freedenfeld Corp. v. Electro-Protective Corp.,*
    126 N.J. Super. 254 (App. Div. 1973)......................................................... 8

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir.2009) ....................................................................... 6

*Gauk v. Karamian,*
    2:11-cv-02346-JPM, 2011 WL 3273123 (W.D. Tenn. July 29, 2011) .................. 22, 23

*G.D. v. Kenny,*
    205 N.J. 275, 311 (2011) ...................................................................... 23, 24

*Globe Motor Car Co. v. First Fidelity Bank,*
    273 N.J. Super. 388 (Super. Ct. Law. Div. 1993) ....................................... 12

*Graves v. Warner Bros.,*
    253 Mich.App. 486, 656 N.W.2d 195 (2002) ............................................. 18

*Hart v. Elec. Arts, Inc.,*
    740 F. Supp. 2d 658 (D.N.J. 2010) ................................................... 20, 21, 23

*Hart v. Elec. Arts, Inc.,*
    09-CV-5990 FLW, 2011 WL 4005350 (D.N.J. Sept. 9, 2011) .................. 25, 26, 27-28

*HML Corp. v. Gen. Foods Corp.,*
    365 F.2d 77 (3d Cir. 1966) ......................................................................... 9

*Hopkins v. Fox & Lazo Realtors,*
    132 N.J. 426 (1993)................................................................................. 13

*Hyde v. Missouri,*
637 S.W.2d. 251 (Mo. Ct. App. 1982) ........................................................ 18

*IMS Health Inc. v. Sorrell,*
630 F.3d 263 (2d Cir. 2010) ........................................................ 25

*Int'l Minerals & Mining Corp. v. Citicorp North America, Inc.,*
736 F.Supp. 587 (D.N.J. 1990) ........................................................ 8

*Ivins v. Town Tavern,*
335 N.J.Super. 188 (App. Div. 2000) ........................................................ 13

*James v. Meow Media, Inc.,*
300 F.3d 683 (6th Cir. 2002) ........................................................ 17

*Jelinek v. Sotak,*
9 N.J. 19 (1952) ........................................................ 13-14

*Jenkins v. Dell Publ'g Co.,*
251 F.2d 447 (3d Cir. 1958) ........................................................ 22, 26

*Jewish Ctr. of Sussex County v. Whale,*
86 N.J. 619 (1981) ........................................................ 8

*Johnson v. Mountainside Hosp.,*
239 N.J.Super, 312 (App. Div. 1990) ........................................................ 15

*Johnson v. Usdin Louis Co., Inc.,*
248 N.J. Super. 525 (App. Div. 1991) ........................................................ 13

*Joseph Burstyn, Inc. v. Wilson,*
343 U.S. 495 (1952) ........................................................ 25

*J.S. v. R.T.H.,*
155 N.J. 330 (1998) ........................................................ 13

*Kaplan v. California,*
413 U.S. 115 (l973) ........................................................ 25

*Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc.,*
249 N.J.Super. 487 (App. Div. 1991) ........................................................ 9

*Kelly v. Gwinnell,*
96 N.J. 538 (1984) ........................................................ 12

vi

*Liberty Media Holdings, LLC v. Does 1-62*,
    11CV 575 MMA NLS, 2011 WL 1869923 (S.D. Cal. May 12, 2011)............................ 18

*Liebholz v. Harriri*,
    CIVA 05-5148 DRD, 2006 WL 2023186 (D.N.J. July 12, 2006) ................................. 21

*LoBosco v. Kure Eng'g Ltd.*,
    891 F.Supp. 1020 (D.N.J.1995) ................................................................................. 30

*McKinley v. Slenderella Sys. Of Camden, N.J., Inc.*,
    63 N.J. Super 571 (App. Div. 1960) .................................................................... 13-14

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*,
    189 N.J.Super. 347 (App. Div. 1983) ...................................................................... 7, 8

*Neitzke v. Williams*,
    490 U.S. 319 (1989). ..................................................................................................... 6

*Nye v. Ingersoll Rand Co.*,
    CIV. 08-3481 DRD, 2011 WL 1790071 (D.N.J. May 10, 2011) ................................... 7

*Orozco v. Dallas Morning News, Inc.*,
    975 S.W.2d 392 (Tex. App. 1998) ............................................................................ 18

*Palmer v. Schonhorn Enterprises, Inc.*,
    96 N.J. Super. 72 (Ch. Div. 1967) ............................................................................ 21

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
    998 F.2d 1192 (3d Cir.1993) ...................................................................................... 6

*Peter W. Kero Inc. v. Terminal Constr. Corp.*,
    6 N.J. 361 (1951) ......................................................................................................... 7

*Poole v. Janeski*,
    259 N.J. Super. 83 (Ch. Div. 1992) .......................................................................... 14

*Presley's Estate v. Russen*,
    513 F. Supp. 1339 (D.N.J. 1981) .............................................................................. 27

*Raroha v. Earle Finance Corp., Inc.*,
    47 N.J. 229 (1966).......................................................................................................... 7

*Rivera v. Washington Mut. Bank*,
    637 F. Supp. 2d 256 (D.N.J. 2009) .......................................................................... 29

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    184 F.3d 280 (3d Cir. 1999) ............................................................. 6

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ........................................................ 27, 28

*Rumbauskas v. Cantor*,
    138 N.J. 173 (1994) ................................................................... 19, 20

*Saltiel v. GSI Consultants, Inc.*,
    170 N.J. 297 (2002) .......................................................................... 29

*Sanchez v. Indep. Bus Co., Inc.*,
    358 N.J. Super. 74 (App. Div. 2003) ............................................ 12, 13

*Schad v. Borough of Mount Ephraim*,
    452 U.S. 61, 65-66 (1981) ............................................................... 25

*Shafer v. H.B. Thomas Co.*,
    53 N.J.Super. 19 (App. Div. 1958) .................................................. 15

*Silverstein v. Dohoney*,
    32 N.J. Super. 357 (App. Div. 1954) .................................................. 9

*Slim CD, Inc. v. Heartland Payment Sys., Inc*,
    CIV. A. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007) .............. 28

*Strachan v. John F. Kennedy Memorial Hosp.*,
    109 N.J. 523 (1988) .......................................................................... 12

*Tacynec v. City of Philadelphia*,
    687 F.2d 793 (3d Cir.1982) ............................................................... 25

*Tellado v. Time-Life Books, Inc.*,
    643 F.Supp. 904 (D.N.J.1986) .................................................... 20, 23

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) ............................................................... 17

*Time, Inc. v. Hill*,
    385 U.S. 374, 397 (1967) ................................................................. 24

*Unifoil Corp. v. Cheque Printers & Encoders Ltd.*,
    622 F.Supp. 268 (D.N.J.1985) ......................................................... 29

*United States v. Stevens,*
    130 S.Ct. 1577 (2010) ........................................................................... 25-26

*Wang v. Allstate Ins. Co.,*
    125 N.J. 2 (1991) ................................................................................. 12

*Wellenheider v. Rader,*
    49 N.J. 1 (1967) .................................................................................. 15

*Werwinski v. Ford Motor Co.,*
    286 F.3d 661 (3d Cir. 2002) ................................................................ 28

*Williamson v. Waldman,*
    150 N.J. 232 (1997)............................................................................. 13

*Winoka Village v. Tate,*
    16 N.J.Super. 330 (App. Div. 1951) ................................................... 9, 10

*Worbetz v. Ward N. Am., Inc.,*
    54 F. App'x 526 (3d Cir. 2002) .......................................................... 9

*Zacchini v. Scripps-Howard Broad,*
    433 U.S. 562 (1977)............................................................................ 24, 25

*Zucker v. Quasha,*
    891 F.Supp. 1010 (D.N.J. 1995) ....................................................... 6

## Rules

Federal Rule of Civil Procedure 12(b)(6) ............................................. 1, 6

## Treatises

57 Am.Jur. (Second) Negligence § 58 (1970) ....................................... 13

49 N.J. Prac., Bus. Law Deskbook § 16:4 (2009–2010 ed.) ................. 21

Restatement (Second) of Torts, § 314A (1965) ..................................... 14

Restatement (Second) of Torts, § 315 (1965) ....................................... 14

Restatement (Second) of Torts § 652, *et seq*........................................19, 20, 21, 22

Restatement (Third) of Unfair Competition § 47 cmt. c. ...................... 24, 26

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984) .............. 19

Defendants Meredith Corporation, Meredith Video Studios ("MVS"), and Parents TV ("Parents") (incorrectly sued herein as "Parent TV") (collectively, "Defendants" or "Meredith") by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the second amended complaint of plaintiffs MaryAnn Sahoury ("Sahoury") and A.S. (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## I.    <u>Preliminary Statement</u>

Despite voluntarily appearing in an educational and informational video (the "Video") about breastfeeding produced by Meredith and agreeing to allow Meredith to use her and her daughter's names in the Video, Plaintiffs now seek to hold Meredith liable for using her and her daughter's names in the Video.   Unfortunately, a rogue faceless person named "Nizarddd" surreptitiously stole Meredith's Video, which identified Plaintiffs, from its Internet site and posted the Video on pornography-related websites.   Plaintiffs filed this suit in this Court, claiming that Meredith should be held liable for the damage caused by Nizarddd.   Plaintiffs' claims fail as a matter of law.

Plaintiffs' Second Amended Complaint is deficient because Plaintiffs consented to the use of their names and likenesses in the Video and, therefore, cannot claim against Meredith that they are damaged for such use.   Consequently, Plaintiffs have failed to state any plausible claim upon which this Court could grant relief.   As a result, Plaintiffs' Second Amended Complaint should be dismissed for failure to state a claim.

II.    **Procedural History and Factual Background**

    A.    **The Parties**

Plaintiff MaryAnn Sahoury ("Sahoury") is an educated woman, who is a veteran in the field of public relations.  (Klear Aff., ¶ 4, Exh. C, Second Amended Complaint (hereinafter the "SAC") ¶¶ 9 and 19).  Prior to becoming a stay at home mom for her infant daughter, Plaintiff A.S., she worked in public relations for all types of companies. (SAC, ¶¶ 9 and 19).

Defendant Meredith Corporation is one of the nation's leading media and marketing companies with businesses centering on magazines (Better Homes and Gardens, Family Circle, and Parents), book publishing, television broadcasting, integrated marketing and interactive media.  (Id. ¶ 1).  For nearly a century, Meredith Corporation brands have been committed to providing women with information and inspiration to create a rich and meaningful life.  (Id.).  One of Meredith Corporation's brands is Parents®, which operates defendant, Parents TV .  (Id. ¶ 2).  MVS, is owned and operated by Meredith Corporation and is a full service video development, production and multi-platform distribution company.  (Id.).  One of their platforms is Parents, which provides video on demand via mobile and cable TV.  (Id.).

    B.    **The Video**

On January 8, 2010 at the recommendation of her lactation consultant, Plaintiff Sahoury voluntarily agreed to appear with her newborn daughter in the Video, *"Breastfeeding Help"* that Meredith produced.  (Id. at ¶¶ 7 and 11). (A true and correct copy of the Video accompanies the Knott Affidavit ("Knott Aff.") as Exhibit A.  Sahoury alleges that prior to filming the Video, the Video producer "specifically represented to both, Sahoury and the lactation consultant, that the finished video would not disclose, either audibly or visually, the full name (first and last) of either MaryAnn Sahoury and/or A.S."  (SAC, ¶ 14).  Based on these representations, Sahoury

2

alleges that, on behalf of herself and A.S., she agreed to participate in the breastfeeding Video. (Id. at ¶ 15).

Plaintiffs further allege, that as Sahoury was about to leave the lactation consultant's home after filming had concluded, the woman in charge told Sahoury that she had to sign a piece of paper that was on a kitchen counter top. (Id. at ¶ 17). She asked Sahoury to sign the paper on behalf of herself and A.S. (Id.). Plaintiffs contend that "MaryAnn Sahoury believed that she was signing a paper, which confirmed what had been represented to her in the morning before the shoot." Id. Sahoury admits that she signed the paper without reading or reviewing it. (Id. at ¶ 18).

The paper that Sahoury signed was an Authorization and Release (the "Release"), which contained the following:

> For value received, I ("Undersigned") enter into this Authorization & Full Release with Meredith Corporation ("Meredith" or "Grantee"), having been informed and understanding that Meredith produces a syndicated television show entitled "Parents" (the "Production") on which **I will appear as a guest, and understanding that my name, likeness, image, voice, appearance and/or performance is being recorded and made a part of this production**.

(Knott Aff., ¶ 6, Exh. B (emphasis added)). Sahoury consented to the use of her and her daughter's names and likenesses and released Meredith from "any and all claims." (Id.).

Sahoury further authorized Meredith, its affiliates, successors and assigns, and those acting under its permission

> to copyright, use, exhibit, transmit, broadcast and/or publish, and license and/or sublicense on a world-wide basis, in perpetuity, whether by digital, or other method; any film/videotape, tape, audio recordings, footage, photographs, negatives, reproductions and/or otherwise of Undersigned's image and voice (referred to as "Recorded Likeness") taken on the session date(s) set forth above, in whole or in part, as may be changed, or reproductions or illustrations thereof, made through and **used in any medium**

3

> **whatsoever (now existing or hereinafter created) and in all forms of marketing and advertising**, now or at any time in the future.

(<u>Id</u>. (emphasis added)).

The Release further states that

> Undersigned does hereby release Meredith, its parent and affiliated companies, and its officers, directors, agents and employees and its assigns, **from <u>any and all claims</u> which the Undersigned may have at any time <u>by reason of the use of the Undersigned's</u> image, voice and <u>name</u> as contemplated herein, including, without limitation, claims of privacy**.

(<u>Id</u>. (emphasis added)).

In the Release, Sahoury acknowledged that she "is providing this Authorization and Release voluntarily and of [her] own free will [and that she] has read completely its terms and fully understands and accepts them." (<u>Id</u>.).  The Release states, in pertinent part, that "[t]his Authorization and Full Release contains the entire agreement between the parties." (<u>Id</u>.).

## C.   <u>The Unforeseeable Internet Theft of the Video</u>

In early July 2010, Sahoury performed a search of her name using Google's search engine and found her name linked to pornography and pornographic websites as well as on YouTube.  (SAC, ¶¶ 20 and 32).  According to the Second Amended Complaint, these websites combined actual footage from Meredith's breastfeeding Video with pornographic video using a woman with similar features and stature to Sahoury misleading those who viewed the video and links into believing that it was Sahoury in both the breastfeeding video and the pornographic video.  (<u>Id</u>. at ¶ 21).

Plaintiffs identified the perpetrator responsible for linking her name and Meredith's Video to pornographic websites as an individual named "Nizarddd." (<u>Id</u>. at ¶ 32).  Nevertheless, Plaintiffs contend that "[h]ad the [Meredith] not used MaryAnn Sahoury's last name,

4

["Nizarddd"] would not have been able to link up the breastfeeding Video and the pornographic video with MaryAnn Sahoury and A.S. connecting both of them to pornography."  (Id. at ¶ 23).

### D.  **The Amended Complaint and Second Amended Complaint**

As a result of the Internet theft of the Video, on September 8, 2011, Plaintiffs filed a Summons and Complaint in this Court.  The Complaint has subsequently been amended twice - once September 21, 2011 and again on November 11, 2011 in an attempt to survive Defendants' Motion to Dismiss. (See Complaint, Amended Complaint and Second Amended Complaint, attached to the accompanying Klear Aff. as Exhs. A, B and C, respectively). The Second Amended Complaint asserts claims for common law fraud/misrepresentation (Count I), negligent misrepresentation (Count II), negligence (Count III), breach of contract (Count IV), invasion of privacy (Count V), negligent infliction of emotional distress (Count VI), and equitable fraud (Count VII).   (See SAC generally). The crux of the claims stem from Defendants' use of Plaintiffs' names in the educational and instructional breastfeeding Video featuring Plaintiffs that Defendants produced. (SAC ¶ 23).

Plaintiffs seek unliquidated compensatory and punitive damages.  In doing so, Plaintiffs allege damages to MaryAnn Sahoury's "profession, her personal life and overall well being." (Id. at ¶ 47).  Specifically, Plaintiffs allege that MaryAnn Sahoury suffers "humiliation, severe stress, anxiety, panic attacks, crying and shaking spells, vomiting, depression, sleeplessness, anger, sadness, and an unhealthy obsession with trying to clear her and her daughter's name." (Id. at ¶ 48).  They further contend that A.S., an infant under two years old, "will be faced with continuing damage as she engages in elementary school, middle school, high school and then college."  (Id. at ¶ 47).

III.    **LEGAL DISCUSSION**

A.    **MOTION TO DISMISS STANDARD**

When reviewing a motion to dismiss on the pleadings, pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss "[i]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009).  Assuming Plaintiffs' alleged facts as true, or any set of facts as true, it is clear that the Second Amended Complaint must be dismissed because Plaintiffs consented to the very act that they now claim has given rise to the instant litigation.

The inclusion of the Release and Video does not convert this motion to dismiss to one for summary judgment because Plaintiffs have referred to these documents in drafting the Second Amended Complaint, and therefore the Release and Video are integral to the Second Amended Complaint.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999); Zucker v. Quasha, 891 F.Supp. 1010, 1013 (D.N.J. 1995) (citing Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192,1196–97 (3d Cir. 1993)).  "Even if a "[c]omplaint does not *explicitly* refer to or cite [a document]...the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 292 (D.N.J. 2009).  Since both the Release and Video have been referred to throughout the SAC, this Court should consider them in this motion to dismiss. (See, e.g., SAC ¶¶ 14-19).

6

**B.** **PLAINTIFFS' CLAIMS FOR FRAUD AND MISREPRESENTATION FAIL BECAUSE IT IS UNREASONABLE AND UNJUSTIFIABLE FOR PLAINTIFFS TO RELY ON PRIOR ORAL STATEMENTS THAT CONTRADICT THEIR SUBSEQUENT WRITTEN CONTRACT.**

"In New Jersey, a signed release carries considerable weight." Cooper v. Borough of Wenonah, 977 F. Supp. 305, 311-12 (D.N.J. 1997).

> It is the general rule that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in the signing.

Cooper, 977 F. Supp. at 311-12 (citing Peter W. Kero Inc. v. Terminal Constr. Corp., 6 N.J. 361, 368 (1951)).

Releases are treated as contracts, for "a release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." Nye v. Ingersoll Rand Co., CIV. 08-3481 DRD, 2011 WL 1790071 (D.N.J. May 10, 2011) (citing Domanske v. Rapid–American Corp., 330 N.J.Super. 241, 246 (App. Div. 2000)).  Furthermore,

> in the absence of fraud, misrepresentation or overreaching by the releasee, in the absence of a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the release is binding and that the releasor will be held to the terms of the bargain he willingly and knowingly entered.

Raroha v. Earle Finance Corp., Inc., 47 N.J. 229, 234 (1966).

Under New Jersey law, "[o]ne of the essential elements of a cause of action for fraud is reliance and a plaintiff must demonstrate that reliance upon any representation was justified and reasonable." Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 844 (D.N.J. 1995) (citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 189 N.J.Super. 347, 355 (App. Div. 1983)); See also Caroll v. Cellco P'ship, 313 N.J.Super. 488, 502 (App. Div. 1998)

(citing "reasonable reliance" as one of the elements necessary to prove common law fraud and "justifiable reliance" as an element of a negligent misrepresentation claim); <u>Foont-Freedenfeld Corp. v. Electro-Protective Corp.</u>, 126 N.J. Super. 254, 257 (App. Div. 1973) (citing "reasonable reliance" as en essential element of an equitable fraud claim).  "A party reasonably relies on a misrepresentation where the 'facts to the contrary were not obvious or did not provide a warning,' or where the relying party did not reasonably 'pursue further investigation' that would have revealed 'the falsity of the representation.'"  <u>Arcand</u>, 673 F. Supp. 2d at 305-06 (citing <u>Nappe</u>, 189 N.J.Super. at 355).  It has been held that

> [a] party in possession of his mental faculties is not justified in relying on representations made, when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations, he is charged with knowledge. If one does not avail himself of the means of knowledge open to him, he cannot be heard to say he was deceived by misrepresentations.

<u>Fleming Companies</u>, 913 F. Supp. at 844 (citing <u>Nappe</u>, 189 N.J.Super. at 355); <u>see also</u> <u>Int'l Minerals & Mining Corp. v. Citicorp North America, Inc.</u>, 736 F.Supp. 587, 597–99 (D.N.J. 1990); <u>Jewish Ctr. of Sussex County v. Whale</u>, 86 N.J. 619 (1981). <u>See</u>, <u>e.g.</u>, <u>Andrea v. Metropolitan Life Ins. Co.</u>, 2000 WL 35361960, *3 (D.N.J. 2000) (In dismissing plaintiff's fraud claim and finding plaintiff's reliance on salesperson's alleged oral misrepresentations misplaced, the Court stated that "[i]t is clear in this case that even a quick perusal of the Policy would have alerted the average person under these circumstances that the terms of the Policy contradicted [the insurance sales representative's] alleged representations. [Plaintiff] may have then known that something was 'rotten in the state of Denmark.'")

    It is unreasonable and unjustifiable for Plaintiffs to rely on the alleged prior oral statement that her and her daughter's names would not be used in the Video because alleged oral

8

misrepresentations, which are contradictory of the undertakings expressly dealt with by the writings, are not effectual to avoid an obligation one knowingly assumed.  See Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J.Super. 570, 575 (App. Div. 1991) (citing Winoka Village v. Tate, 16 N.J. Super. 330 (App. Div. 1951)); See, e.g., Arcand, 673 F. Supp. 2d at 306 (finding that consumers failed to allege reasonable reliance on printer's "empty" notification when the user manual clearly indicated that the cartridge only provides the user a predetermined number of pages.); Worbetz v. Ward N. Am., Inc., 54 F. App'x 526, 537 (3d Cir. 2002) (holding that where the insurance claims adjuster was an "at will" employee and signed several documents stating that he was an "at will" employee, he could not show that he reasonably relied on his employer's alleged promise to provide two years of work to him.).   "The parol evidence rule inhibits additions to or variations from a writing intended to constitute the entire agreement and as well contradictions of so much of an agreement as may have been reduced to written form." Silverstein v. Dohoney, 32 N.J. Super. 357, 361 (App. Div. 1954).   "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."  City of Orange Twp. v. Empire Mortg. Servs., Inc., 341 N.J. Super. 216, 224 (App. Div. 2001) (citing Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc., 249 N.J.Super. 487, 493 (App. Div. 1991)).  Further, when the subsequent written contract includes an integration clause that the contract is complete within its fours corners, prior negotiations are not part of the contract.  See Filmlife, 251 N.J.Super. at 573; see, e.g., HML Corp. v. Gen. Foods Corp., 365 F.2d 77, 82 (3d Cir. 1966).

Here, the terms of the release were explicit and Sahoury expressly acknowledged that "[t]his Authorization and Release contains the entire agreement between the parties."  (Knott Aff., ¶ 6, Exh. B).  Accordingly, under the parol evidence rule, any prior alleged discussions or

representations by Meredith are barred and should not be permitted to contradict the plain and unambiguously written release.  Consequently, it is unreasonable and unjustifiable for Plaintiffs to rely on the alleged prior oral statement.

The language of the Release is explicit, yet broad.  It provides that Plaintiffs "release Meredith . . . from <u>any and all claims</u> which [Plaintiffs] may have <u>at any time by reason of the use of [Plaintiffs']</u> image, voice, and <u>name</u>, as contemplated herein, including without limitation claims of privacy.  Because Plaintiffs' claims arise out of Meredith's use of her and her daughter's names as contemplated and specifically provided for in the Release, they are barred by the language of the Release and should be dismissed.

It is also of no avail that Sahoury "believed that she was signing a paper, which confirmed what had been represented to her in the morning before the shoot" (SAC, ¶ 17), because "alleged oral misrepresentations, being contradictory of the undertakings expressly dealt with by the writings, are not effectual in that circumstance to avoid the obligation [one] knowingly assumed."  <u>Winoka Village</u>, 16 N.J.Super. at 332; <u>See</u>, <u>e.g.</u>, <u>Ames v. U.S. Postal Serv.</u>, CIV. 05-4429 (JBS), 2005 WL 3536202, *3 (D.N.J. Dec. 21, 2005) (stating that reliance on a USPS employee's oral representations is not reasonable where the mailer could have learned the restrictions on insurability through the exercise of reasonable diligence, *i.e.,* reading the reverse side of the mail label disclosing the limits of indemnification). As a result, any reliance by Sahoury on the alleged statements made by the "woman" who asked her to sign the Release is neither reasonable nor justified.

Sahoury admits "she signed the [Release] without reading or reviewing it."  (SAC, ¶ 18). Had Sahoury taken the few minutes needed to read the six-paragraph Release, she would have certainly understood that by signing the Release she expressly "consent[ed] to use of [her and her

daughter's] name in connection with the Recorded Likeness" and authorized Meredith to use her recorded likeness "in any medium whatsoever (now existing or hereinafter created)." (Knott Aff., ¶ 6, Exh. B.)   In addition, had Sahoury read the Release, she would have certainly understood that by signing the Release she was agreeing to waive her right to bring all of the claims she has now asserted against Defendants. (Id.).   Accordingly, Plaintiffs cannot reasonably and justifiably rely on the alleged prior oral statement when the subsequent written contract clearly permitted Meredith to use Plaintiffs' names and likenesses and, furthermore, barred each of the claims Plaintiffs has asserted.   Thus, Plaintiffs fraud based claims as well as their entire Second Amended Complaint should be dismissed.

### C.  PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE HAS BEEN NO BREACH.

Based on the discussion of the parole evidence rule and the terms of the contract, *supra*, Meredith was permitted to use Plaintiffs' names and likenesses in the Video.   Therefore, Meredith could not have and, in fact, did not breach its contract with Plaintiffs when it used her and her daughter's names in the video.

Based on the terms of the contract, the Release permitted Meredith to use the Video in all mediums:

> Undersigned authorizes Meredith, its affiliates, successors and assigns, and those acting under its permission to copyright, use, exhibit, transmit, broadcast and/or publish, and license and/or sublicense on a world-wide basis, in perpetuity, whether by digital, or other method; any film/videotape, tape, audio recordings, footage, photographs, negatives, reproductions and/or otherwise of Undersigned's image and voice (referred to as "Recorded Likeness") taken on the session date(s) set forth above, in whole or in part, as may be changed, or reproductions or illustrations thereof, made through and **used in any medium whatsoever (now existing or hereinafter created) and in all forms of marketing and advertising**, now or at any time in the future.

(Knott Aff., ¶6, Exh. B).

The fact that these terms were in bold within the Release as presented to Sahoury further undermines Plaintiffs' contention that Meredith promised that the Video would be shown only on Meredith's website and cable TV. (SAC ¶ 14). Plaintiffs have failed to allege that Meredith materially breached the contract, an essential element of a breach of contract claim. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing Coyle v. Englander's 199 N.J.Super. 212, 223 (1985)).

> **D.   AS A MATTER OF LAW, PLAINTIFFS' NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS MUST BE DISMISSED WHERE MEREDITH HAD NO DUTY OF LAW.**

Under New Jersey law, "to establish a negligence claim there must be a finding that the defendant owed some duty to the party complaining and a breach of that duty." Globe Motor Car Co. v. First Fidelity Bank, 273 N.J. Super. 388, 393 (Super. Ct. Law. Div. 1993) (citations omitted). "To prove negligent infliction of emotional distress, a plaintiff must prove that the 'defendant's conduct was negligent and proximately caused plaintiff's injuries.'" Cole v. Laughrey Funeral Home, 376 N.J. Super. 135, 148 (App. Div. 2005) (citing Decker v. Princeton Packet, Inc., 116 N.J. 418, 429 (1989)).

"The question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a question of fairness or policy." Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991); Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529 (1988). "The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Strachan, 109 N.J. at 529 (citing Kelly v. Gwinnell, 96 N.J. 538, 544 (1984)); Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999). These factors are considered under the totality of the circumstances. Sanchez v. Indep. Bus Co., Inc., 358 N.J. Super. 74, 80-81 (App. Div. 2003) (citing Clohesy v. Food Circus Supermarkets, Inc., 149 N.J.

496, 508 (1997)).  In the context of negligent infliction of emotional distress, the Supreme Court

held that a duty of care arises when a defendant should have foreseen "'fright or shock severe

enough to cause substantial injury in a person normally constituted.'"  Cole, 376 N.J. Super. at

149 (citing Decker, 116 N.J. at 429).

"The existence of a duty is defined not by the contractual relationship between the parties

but, rather, by consideration of foreseeability and fairness."  75 Spruce St., L.L.C. v. New Jersey

State Bd. of Educ., 382 N.J. Super. 567, 580 (Ch. Div. 2005) (citations omitted).  The analysis is

fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific

case and generate intelligible and sensible rules to govern future conduct.  Sanchez, 358 N.J.

Super. at 80-81 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993)); Alloway v.

Bradlees, Inc., 157 N.J. at 231. Reasonableness, public policy, fairness and common sense also

must be taken into account when imposing new legal duties.  Sanchez, 358 N.J. Super. at 80-81

(citing Williamson v. Waldman, 150 N.J. 232, 245-246 (1997)).

When a plaintiff seeks to impose a duty on a defendant to control the acts of a third party,

the plaintiff "may be required to prove that defendant was in a position to 'know or have reason

to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third

person' that was 'likely to endanger the safety' of another." J.S. v. R.T.H., 155 N.J. 330, 338

(1998) (quoting Clohesy, 149 N.J. at 507).  Even if the risk is foreseeable, a legal duty does not

necessarily arise.  Ivins v. Town Tavern, 335 N.J.Super. 188, 195 (App. Div. 2000).  "Foresight,

not hindsight, is the standard by which one' duty of care is to be judged."  Johnson v. Usdin

Louis Co., Inc., 248 N.J. Super. 525, 529 (App. Div. 1991) (quoting 57 Am.Jur. (Second)

Negligence § 58 (1970)).  The duties of reasonable care and diligence are founded on the

probabilities of a given situation, not on mere possibility.  McKinley v. Slenderella Sys. of

Camden, N.J., Inc., 63 N.J. Super. 571, 582 (App. Div. 1960) (citing Jelinek v. Sotak, 9 N.J. 19, 24 (1952)).

In the context of physical harm, as opposed to the emotional harm alleged here, Restatement (Second) of Torts, provides in section 315: "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a *special relation* exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." Champion ex rel. Ezzo v. Dunfee, 398 N.J. Super. 112, 121 (App. Div. 2008) (citing Restatement (Second) of Torts § 315 (1965) (emphasis added)). "Parties will be found to share a special relationship, thus giving rise to a duty, when one person has control of another, when the person's own conduct has created a perilous situation, or where one has voluntarily taken custody of another so as to deprive him of his normal opportunities for protection." Poole v. Janeski, 259 N.J. Super. 83, 84 (Ch. Div. 1992) (citing Restatement (Second) of Torts, § 314A  (1965)). Examples of a special relationship include that of parent-child, master-servant, landlord-tenant, or guardian-ward. Champion, 398 N.J. Super. at 122. Thus, absent a special relationship, there is no duty to control a third person's conduct. Id. at 122.

Here, Plaintiffs' claim that Meredith knew or should have known (1) "that the use of Mary Ann's first and last name in the breastfeeding video could cause, and did, in fact, cause the plaintiffs' damage;" and (2) that posting the breastfeeding video on You Tube without employing any types of protection in the downloading and use of the video, as they do in protecting the videos they have housed on their website, could cause, and in fact did cause, damage to the plaintiffs." (SAC, ¶¶ 62-63). Yet, Plaintiffs provide no reason why Meredith knew or should have known that MaryAnn's damages were foreseeable. Plaintiffs cite no prior

incidences where "Nizarddd" or other rogue individuals uploaded Meredith's content without its permission and used that content for improper purposes such as on pornographic websites as alleged by Sahoury.

Instead, Plaintiffs allege that Defendants' violated this so-called duty by (1) failing to uphold what Plaintiffs contend is Defendants' "policy and procedure to not use the full name, first and last, of mothers and babies in the other institutional education videos…that they produce and post on the website or on the internet;" and (2) "not taking reasonable steps to protect the videos posted on other internet websites as they do in protecting the videos they put on their own website."  (SAC, ¶¶ 65-66).  It has long been held that "a defendant's 'internal policies-standing alone-cannot demonstrate the applicable standard of care.'"  Cast Art Indus., LLC v. KPMG LLP, 416 N.J. Super. 76, 106 (App. Div. 2010). See Estate of Elkerson v. N. Jersey Blood Ctr., 342 N.J. Super. 219, 229 (App. Div. 2001);  Wellenheider v. Rader, 49 N.J. 1, 7 (1967); Shafer v. H. B. Thomas Co., 53 N.J. Super. 19, 23 (App. Div. 1958).  Thus, "'[w]hile a defendant's internal rules may be admissible as evidence of whether reasonable care was exercised, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the traditional common-law standard of reasonable care under the circumstances." Cast Art Indus., 416 N.J. Super. at 106.  See Johnson v. Mountainside Hosp., 239 N.J.Super. 312, 322-24 (App.Div. 1990).  Moreover, "unlike the violation of a state statute, failure to comply with a company rule cannot constitute negligence *per se*."  Clement v. Consol. Rail Corp., 130 F.R.D. 530, 538 (D.N.J. 1990).  Consequently, Meredith's own alleged internal policies or procedures are not the equivalent of a duty and any alleged breach thereof cannot constitute negligence.

Here, there is no traditional common-law standard of reasonable care under the circumstances.  Meredith had no duty to Plaintiffs outside of the specific promises made in the Release.  Nevertheless, Plaintiffs seek to impose upon Meredith "a duty…to exercise reasonable and ordinary care in the filming, editing, production and dissemination of the breastfeeding video."  (SAC, ¶ 16).  Plaintiffs do not assert that such a duty in law or contract exists, but nevertheless seek to have the Court impose this so-called non-existent duty upon Meredith.  Moreover, in asserting such a duty, Plaintiffs seek to hold Meredith liable for damages it admits were caused by a faceless individual named Nizarddd.  (SAC, ¶¶ 31-32).

Neither the Third Circuit nor any other jurisdictions have found that companies in the context of the Internet have a duty to protect against the actions of third parties.  Doe v. MySpace, Inc. is instructive. 474 F. Supp. 2d 843 (W.D. Tex. 2007) aff'd, 528 F.3d 413 (5th Cir. 2008).  In Doe v. MySpace, the mother of a minor sued MySpace, a social networking website that allowed its users to create profiles and interact with other members of the website, after her minor daughter was sexually assaulted by another member of MySpace, whom she met on the website.  474 F. Supp. 2d at 846.  Plaintiff sued for negligence claiming that "MySpace had a duty to institute reasonable safety measures to prevent contact between sexual predators and minors on its website because it was foreseeable that minors such as Julie Doe could be injured by the criminal acts of adult MySpace users.  Id. at 851.  Plaintiffs further alleged that MySpace was on notice of several previous sexual assaults perpetrated by MySpace users against minor members; therefore, Julie Doe's sexual assault was the foreseeable result of MySpace's negligent failure to take appropriate safety measures.

The Fifth Circuit declined to hold that MySpace had such a duty, and therefore dismissed Plaintiff's negligence claim. In doing so, the Court looked first at the general rule that a person

has no legal duty to protect another from the criminal acts of a third person or control the conduct of another. It did recognize, however, that exceptions exist where a special relationship exists between the actor and the third party. Id. at 850. Nevertheless, the Court found that Plaintiffs have alleged no such special relationship, such as (1) employer and employee; (2) parent and child; or (3) independent contractor and contractee, existed between MySpace and either the third-party actor or the minor. The Court noted that, "[h]ere the alleged sexual assault happened offline, after telephone conversations offline, and there is no allegation MySpace was in control of the premises where the crime occurred." Id. Furthermore, "[t]he Court decline[d] to extend premises liability cases to the internet context particularly where, as here, the Defendant provide[d] its service to users for free." Id. The Court noted that "Plaintiff has cited no case law indicating that the duty of a premises owner should extend to a website as a "virtual premises." Id.

Similarly, here, where no special relationship exists between Meredith and Sahoury or "Nizarddd", the Court must decline to find that Meredith has a duty to protect Sahoury from acts committed by unknown faceless individuals on the web. See James v. Meow Media, Inc., 300 F.3d 683 (6th Cir. 2002) (finding that no special relationship existed between students who were shot and killed by classmate and companies that produced or maintained video games, movies, and Internet websites which allegedly desensitized classmate to violence and caused his actions, so as to support imposition on companies of duty in tort, under Kentucky law, to anticipate and protect students against classmate's conduct; companies did not know students prior to classmate's actions or take affirmative steps which disabled them from protecting themselves.) Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010) (in the context of trademark law it has been held that an online auction site proprietor's generalized knowledge of infringement of

seller's trademark on its website was not sufficient to impose upon proprietor an affirmative duty

to remedy the problem, and therefore proprietor was not liable for contributory trademark

infringement for facilitating the infringing conduct of counterfeiting vendors nor could proprietor

be held contributorily liable without evidence that it had specific contemporary knowledge of

which particular listings were infringing or would infringe in the future).  See also Liberty Media

Holdings, LLC v. Does 1-62, 11CV 575 MMA NLS, 2011 WL 1869923 (S.D. Cal. May 12,

2011) (finding maker of adult entertainment films asserted no legal duty in connection with its

negligence cause of action claiming that Defendants failed to secure their Internet access, which

by virtue of this unsecured access, allowed the use of their Internet accounts to perform the

complained of copying and sharing of Plaintiff's copyrighted motion picture).

Even in the context of print or broadcast media, no court has held that such defendants

have duty to protect against the actions of rogue individuals except where foreseeable. See, e.g.,

Graves v. Warner Bros., 253 Mich.App. 486, 488, 656 N.W.2d 195 (2002) (holding that

producers of the Jenny Jones Show owed no legally cognizable duty to protect a former show

guest from the homicidal acts of a third party who participated in the same taping session.);

Orozco v. Dallas Morning News, Inc., 975 S.W.2d 392, 395 (Tex. App. 1998) (finding that

newspaper had no duty to refrain from publishing suspect's location and thus could not be held

liable for retaliatory shooting of suspect's family where newspaper previously covered stories

related to retaliatory gang violence). But see Hyde v. Missouri, 637 S.W.2d 251 (Mo. Ct. App.

1982) (holding a newspaper and other defendants liable for publishing the name of a victim of a

sexual assault while her attacker was still at large where there was a causal connection between

the published information and the attacker's continued threats to the victim).  Given that no

Court in this country has imposed a legal duty upon the operator of an Internet site, publisher or

broadcaster for actions taken surreptitiously by a rogue third party where the actions by the third party were not foreseeable, this Court should not now countenance such a decision. Consequently, Plaintiffs' negligence and negligent infliction of emotional distress claims should be dismissed.

### E.    PLAINTIFFS' MISAPPROPRIATION CLAIM MUST FAIL BECAUSE PLAINTIFF'S LIKENESS WAS NOT USED FOR TRADE PURPOSES AND THE VIDEO AT ISSUE IS AN EXPRESSIVE WORK FULLY PROTECTED BY THE FIRST AMENDMENT.

Plaintiffs' misappropriation claim fails for two essential reasons.  First, Plaintiffs' claim must fail because Sahoury's name was not used for trade purposes – one of the elements of a commercial misappropriation claim.  Second, even assuming Plaintiff's name was used for trade purposes, the Video is an expressive work that is fully protected by the First Amendment.

### 1.    New Jersey's Right of Publicity Law Requires a Commercial Exploitation of Plaintiff's Name or Likeness

New Jersey has adopted and follows the analysis of the Restatement (Second) of Torts § 652 on invasion of privacy claims.  Accordingly, under the Restatement an invasion of privacy claim consists of four separate and distinct torts.  Those include the following:

> (1) intrusion (*e.g.,* intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs); (2) public disclosure of private facts (*e.g.,* making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.

Rumbauskas v. Cantor, 138 N.J. 173, 180 (1994) (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984)).

Plaintiffs do not specify which of the four separate and distinct torts of invasion of privacy Defendants have violated.  (SAC, ¶¶ 72-75).  Defendants assume, however, that

Plaintiffs' claim is for misappropriation of a person's name or likeness because in Plaintiffs' invasion of privacy claim they allege that "Defendants used MaryAnn's first and last name in their breastfeeding video for trade purposes," which is one of the elements of a misappropriation claim. Castro v. NYT Television, 370 N.J. Super. 282, 297 (App. Div. 2004) (See also SAC, ¶ 73).

New Jersey recognizes the common law tort of misappropriation of a person's name or likeness, sometimes called the right of publicity. Rumbauskas v. Cantor, 138 N.J. at 179-82. "The foundation for this tort is recognition that a person has an interest in their name or likeness 'in the nature of a property right.'" Castro, 370 N.J. Super. at 297 (quoting Restatement (Second) of Torts, § 652C comment a). In New Jersey, the tort consists of two basic elements: (1) the use of plaintiff's name or likeness, (2) for "trade purposes" or to "advertise the defendant's business or product." Id. "Thus, the use of a person's name or likeness 'for trade purposes' is an essential element of the tort." Id. See Faber v. Condecor, Inc., 195 N.J.Super. 81, 88 (App. Div. 1984) (affirming liability for right of publicity because photograph of plaintiff was used as insert in defendant's picture frames, constituting a "commercial use" and for "trade purposes"); see also Tellado v. Time-Life Books, Inc., 643 F.Supp. 904, 909-10 (D.N.J.1986) ("[U]nder New Jersey common law, defendant[s] would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, i.e., if defendant was seeking to capitalize on defendant's likeness for purposes other than the dissemination of news or information.").

It is clear under New Jersey law "that the touchstone of the commercial purpose requirement is whether the publication uses the plaintiff's likeness "for the purpose of capitalizing upon the name by using it in connection with a commercial project...'" Hart v. Elec.

Arts, Inc., 740 F. Supp. 2d 658, 667-68 (D.N.J. 2010) (citing Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72, 79, (Ch. Div. 1967)). See Castro, 370 N.J.Super. at 297; 49 N.J. Prac., Bus. Law Deskbook § 16:4 (2009–2010 ed.) ("In New Jersey, an advantage or benefit accruing to the defendant is a *sine qua non* for a successful claim: mere publicity is not actionable; it must be shown that defendant acted with a commercial purpose or otherwise sought some benefit from revealing information about plaintiffs.") (emphasis in original) (internal quotation marks omitted).   "As the Restatement puts it, '[u]ntil the *value* of the name has in some way been appropriated, there is no tort.'" Hart v. Elec. Arts, Inc., 740 F. Supp. 2d at 667-68 (citing Restatement (Second) of Torts, § 652C c) (emphasis added).

The fact that the breastfeeding video was broadcast online and on YouTube does not in and of itself give Plaintiffs the right to maintain an action for misappropriation.  See Liebholz v. Harriri, CIVA 05-5148 DRD, 2006 WL 2023186 (D.N.J. July 12, 2006) ("Not every use of one's image or likeness by a magazine is considered a 'commercial use,' since otherwise almost any publication of a name or likeness would be misappropriation.").  In Castro, the Court explained that "[t]he broadcast of videotape footage on a television show does not give a person who has been videotaped the right to maintain an action for appropriation of his or her likeness." 370 N.J. Super. at 297.  Relying the Restatement of Torts, the Court reasoned that

> [n]o one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendants' benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution,

> does not become liable under the rule stated in this Section
> to every person whose name or likeness it publishes.

Id. at 297 (quoting Restatement (Second) of Torts, § 652C comment d (1977)).  See, e.g., Jenkins v. Dell Publ'g Co., 251 F.2d 447, 450 (3d Cir. 1958) (finding that the use of family photograph in a magazine article giving a factual account of a homicide of one of the family members does not constitute a "commercial purpose" where the homicide story is recounted solely for the interest it may evoke from the reader).

Here, Plaintiffs cannot make out a commercial appropriation claim simply because Meredith is a publisher and operates an online video channel for its Parents© brand.  This is equally true even if the Court were to assume that Plaintiffs' allegations regarding Meredith's online business model of including links to its own website from the videos it posts on YouTube and "charg[ing] companies who advertise on their website more advertising fees depending on the traffic defendants get to their website" are correct. (SAC, ¶ 26).  Gauk v. Karamian, 2:11-CV-02346-JPM, 2011 WL 3273123 (W.D. Tenn. July 29, 2011) is instructive.  In that case, a local television news reporter sued the website operator of a gossip website for invasion of privacy, among other claims, after the website published two posts about Plaintiff which included photos of her.  In Gauk, the Plaintiff argued that the website exploited her image and likeness for commercial gain by using her status as a local news celebrity, which, in turn, increased the volume of internet users to the site and, as a result, increased the advertising revenue of the website.   Specifically, Plaintiff contended that the advertising revenue was increased "because some of the site visitors viewed and clicked on advertisements and purchased various goods and services." Gauk, 2011 WL at *4.  Plaintiff further alleged that the website appropriated her identity "as an item of commerce and that this appropriation is the source of revenue supporting their website." Id.

Defendants in <u>Gauk</u> sought to dismiss this claim by arguing that it "did not use Plaintiff's name or likeness for purposes of advertising or soliciting any goods or services." <u>Id</u>.  The Court agreed and noted that Plaintiff failed to show

> a causal connection…between Defendant's use of her name and image and an increase in visitors to the site or advertising revenue. Plaintiff offered no evidence that Defendants marketed their site by emphasizing Plaintiff's appearance on the site, used portions of the posts in teasers on other sites to draw more visitors, prominently displayed the posts regarding Plaintiff on the site, advertised Plaintiff's appearance in connection with the sale of any of Defendants' products, or charged higher premiums to advertisers for advertising space on the pages pertaining to Plaintiff.

<u>Id</u>. at *6.

Similarly, here, that Meredith made a profit from publishing the *Breastfeeding Help* video, attracted YouTube viewers of the Video to its own website, or received advertising revenue from increased traffic to its own website does not make its use of Plaintiffs' names a "commercial purpose."  <u>See</u>, <u>e.g.</u>, <u>Hart v. Elec. Arts, Inc.</u>, 740 F. Supp. 2d at 668 ("to show that the commercial purpose requirement is met here, Plaintiff would have to allege that Defendant used his likeness to increase its sales of the video games, for example."); <u>G.D. v. Kenny</u>, 205 N.J. 275, 311 (2011) ("That the . . . defendants are in the business of public relations and marketing and prepared the campaign flyers does not make publication of the flyers a publication in the commercial sense."); <u>Compare</u> <u>Canessa v. J. I. Kislak, Inc.</u>, 97 N.J. Super. 327, 356-58 (Ch. Div. 1967) (finding real estate agency's use of a newspaper article, which featured its client, in its own advertising brochures constituted misappropriation); <u>Faber</u>, 195 N.J.Super. at 88-89 (finding Defendant's use of Plaintiff's picture in a frame sold to public a direct "trade purpose"); <u>Tellado</u>, 643 F.Supp. at 909-10 (finding publisher's use of photograph of soldier in Vietnam in advertisement for book series on Vietnam war was not privileged as matter of law from misappropriation of likeness claim).  Plaintiffs' Complaint is void of any allegations as to how a

specific use or appropriation of Plaintiff's name increased its advertising or profit margins.  In fact, the only uses of the video the Second Amended Complaint appears to mention belong to actions taken by an unrelated faceless individual named "Nizarrddd."  Moreover, Plaintiffs admit that the video was made for educational and informational purposes, thereby contradicting the very essence of their invasion of privacy claim.  (SAC, ¶¶ 11, 14 and 25-26).  Consequently, Plaintiffs' invasion of privacy claim should be dismissed.

**2.      The First Amendment Bars Plaintiffs' Misappropriation Claim.**

Assuming for purposes of this motion that Plaintiffs' misappropriation claim is valid, those claims are barred by the First Amendment.

The Supreme Court has directed that state law rights of publicity must be balanced against the First Amendment.   <u>Zacchini v. Scripps-Howard Broad</u>, 433 U.S. 562, 574-575 (1977).  A right of publicity claim is "fundamentally constrained by the public and constitutional interest in freedom of expression."   Restatement (Third) of Unfair Competition § 47 cmt. c. Because countless expressive works, including biographies, novels, magazine articles, movies, plays, songs, paintings, documentaries, and video games, incorporate the names or likeness of real-life individuals, courts have long cautioned that "[t]he right of publicity has a potential for frustrating" constitutionally protected speech. <u>Comedy III Productions, Inc. v. Gary Saderup, Inc.</u>, 25 Cal. 4th 387, 397, 21 P.3d 797 (2001).  The New Jersey Supreme Court recently held in <u>G.D. v. Kenny</u>, "that books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." 205 N.J. at 312 (citing  <u>Time, Inc. v. Hill</u>, 385 U.S. 374, 397 (1967)).  Indeed, the Third Circuit has "emphasize[d] that courts must circumscribe the right of publicity so that musicians, actors, and other voice artists do not get a right that extends beyond commercial

advertisements to other artistic expression." Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1032 (3d Cir. 2008).

> ### a.   The *Breastfeeding Help* Video Constitutes Expressive Speech That Is Fully Protected By the First Amendment.

The First Amendment analysis begins with a determination of whether the work at issue is expressive speech.  "New Jersey. . .recognizes First Amendment protection for entertainment-based, news-related works." Hart v. Elec. Arts, Inc., 09-CV-5990 FLW, 2011 WL 4005350 (D.N.J. Sept. 9, 2011).  Motion pictures and videos or programs broadcast by radio and television for entertainment purposes have long been held as expressive works that fall within the First Amendment guarantee. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65-66 (1981) (citing Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952)); Associated Film Distribution Corp. v. Thornburgh, 683 F.2d 808, 811 (3d Cir. 1982).  The First Amendment's guarantee of free speech extends not only to political and ideological speech, but also to "[e]ntertainment ... motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works."  Tacynec v. City of Philadelphia, 687 F.2d 793, 796 (3d Cir.1982) (quoting Schad, 452 U.S. at 65) (citations omitted); Kaplan v. California, 413 U.S. 115, 119–120 (l973) ("[P]ictures, films, paintings, drawings, and engravings ... have First Amendment protection.").

The fact that the *Breastfeeding Help* video is informational or educational and not purely for entertainment purposes does not make the video any less protected under the First Amendment.  Zacchini, 433 U.S. 562 (1977) ("There is no doubt that entertainment, as well as news, enjoys First Amendment protection."); See, e.g., IMS Health Inc. v. Sorrell, 630 F.3d 263, 271-72 (2d Cir. 2010) cert. granted, 131 S. Ct. 857, 178 L. Ed. 2d 623 (U.S. 2011) and aff'd, 131 S. Ct. 2653, 180 L. Ed. 2d 544 (U.S. 2011) ("The First Amendment protects '[e]ven dry

information, devoid of advocacy, political relevance, or artistic expression.'"); United States v. Stevens, 130 S.Ct. 1577, 1585 (2010) (videos showing animal cruelty not categorically unprotected by the First Amendment).

It is equally "irrelevant" whether the work at issue is about "about important public events or a subject that provides only entertainment and amusement." Castro, 370 N.J. Super. at 298. Jenkins, 251 F.2d at 452 ("[I]t is neither feasible nor desirable for a court to make a distinction between news for information and news for entertainment in determining the extent to which publication is privileged."). The determination that the challenged *Breastfeeding Help* video is an expressive work fully protected by the First Amendment is a question of law that the court can reach on the motion to dismiss by reviewing the Video itself. Castro, 370 N.J. Super. at 298 (granting motion to dismiss misappropriation claims for television show). See also Facenda, 542 F.3d at 1016 ("the categorization of speech is a question of law that we must resolve through independent review of the program.").

> **b.** **Under the *Rogers* Test, the First Amendment Bars Plaintiffs' Misappropriation Claim**

Once a court determines that the speech at issue is expressive, it must turn to the First Amendment defense of the right of publicity claim. When faced with a right of publicity claim that challenges an expressive work, courts must balance First Amendment interests with the plaintiff's economic interest in his or her persona, mindful that the rights of publicity must be "'fundamentally constrained by the public and constitutional interest in freedom of expression.'" ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 930 (6th Cir. 2003) (quoting Restatement (Third) of Unfair Competition § 47 cmt. c). Neither New Jersey nor the Third Circuit has explicitly adopted a test that reconciles First Amendment interests with the state right of publicity. See, e.g., Hart v. Elec. Arts, Inc., 09-CV-5990 FLW, 2011 WL 4005350, *29 (D.N.J. Sept. 9, 2011)

26

(where this Court held that the First Amendment bars a right of publicity claim by analyzing the facts under both the Rogers "relatedness" test and the transformative test, but declined to adopt either one.).   Nevertheless, application of the Rogers test is most appropriate here where no transformative use of the plaintiff's name or likeness may be discerned.

Under the "transformative test", adopted by California and other state courts, right of publicity claims attacking an expressive work are barred when "the celebrity likeness is but one of the 'raw materials' from which an original work is synthesized." Comedy III Productions, 25 Cal. 4th at 409.   Presley's Estate v. Russen, which involved an Elvis impersonation act, is instructive. 513 F. Supp. 1339 (D.N.J. 1981).   In that case, the Court declined to find the impersonation "transformative" and reasoned that "entertainment that is merely a copy or imitation, even if skillfully and accurately carried out, does not really have its own creative component and does not have a significant value as pure entertainment." Presley's Estate, 513 F. Supp. at 1359. Application of this test to the facts before this Court seem contrived where there is no secondary use of Plaintiff's likeness.   Moreover, here, Sahoury has consented to the use of her and her daughter's likenesses and has, in fact, appeared in the Video, thus there can be no transformative use.

Meanwhile, the Rogers test, which was developed by the Second Circuit in Rogers v. Grimaldi, provides that use of a celebrity's name in a motion picture title is protected from a right of publicity action unless that use is either (1) "wholly unrelated" to the content of the work or (2) "simply a disguised commercial advertisement for the sale of goods or services."  875 F.2d 994, 1004 (2d Cir.1989).   In the Rogers case, the Second Circuit reasoned that the film titled "Ginger and Fred" "was entitled to First Amendment protection because the [title] (sic) bore some relevance to the film's story and because the title contained no explicit indication that

Ginger Rogers endorsed or had a role in developing the film." Hart v. Elec. Arts, Inc., at *25. (citing Rogers, 875 F.2d at 1001).

Here, the Rogers test bars Plaintiffs' claim.  First, Sahoury's likeness is related to the content of the *Breastfeeding Help* video, which contains an interview with Sahoury regarding challenges she confronted when breastfeeding and how she overcame those challenges.  Knott Aff., ¶6, Exh. B.  Clearly, using the likeness, name, and image of Sahoury, a woman who overcame challenges breastfeeding, is not "wholly unrelated" to an educational and informational video about breastfeeding.  Second, the use of Sahoury's likeness cannot reasonably be considered a "disguised advertisement."  As even Plaintiffs' admit the purpose of the Video was educational and informational and as discussed in section III(E)(1), supra, is clearly not an advertisement.  (SAC, ¶¶ 11, 14 and 25-26).  Consequently, Plaintiffs' invasion of privacy claim is barred by the First Amendment and should be dismissed.

### F.   PLAINTIFFS' FRAUD AND TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE.

Plaintiffs' common law fraud (Count I), negligent misrepresentation (Count II), negligence (Count III), negligent infliction of emotional distress (Count VI) and equitable fraud (Count VII) claims are barred by the economic loss doctrine.  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir.1995) (quoting Foodtown v. Sigma Mktg. Sys., Inc., 518 F.Supp. 485, 490 (D.N.J. 1980)).  "The Third Circuit has held, '[t]he economic loss doctrine is designed to place a check on limitless liability ... and [to] establish clear boundaries between tort and contract law.'"  Slim CD, Inc. v. Heartland Payment Sys., Inc, CIV. A. 06-2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007) (citing Werwinski v. Ford Motor Co., 286 F.3d 661, 680 (3d Cir.2002)).  "The Third

Circuit further stated that where there are two competing and sensible interpretations of state law, district courts 'should opt for the interpretation that restricts liability, rather than expands it.'" Id.

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). "If a defendant 'owe[s] a duty of care separate and apart from the contract between the parties,' a tort claim such as negligence may lie. Rivera v. Washington Mut. Bank, 637 F. Supp. 2d 256, 269 (D.N.J. 2009) (citing Saltiel, 170 N.J. at 314). "But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." Rivera, 637 F. Supp. 2d at 269 (citing Saltiel, 170 N.J. at 316). Furthermore, courts have "construed the law of New Jersey to prohibit fraud claims when the 'fraud contemplated by the plaintiff ... does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself." Unifoil Corp. v. Cheque Printers & Encoders Ltd., 622 F.Supp. 268, 271 (D.N.J.1985).

The "critical issue" with regard to economic loss "is whether the allegedly tortious conduct is extraneous to the contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 564 (D.N.J. 2002) (citing Emerson Radio Corp. v. Orion Sales, Inc., No. Civ. A. 95-6455, 2000 WL 49361, at *7 (D.N.J .2000)). However, a mere "subsequent failure of the promisor to do what he has promised" is not recoverable in tort. Bracco Diagnostics, 226 F. Supp. 2d at 563. By way of explanation, the Courts have stated that

> [A]n act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be. Illustrating with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.

29

Chen v. HD Dimension, Corp., CIV.A. 10-863 FLW, 2010 WL 4721514 (D.N.J. Nov. 15, 2010)

(citations omitted); See also LoBosco v. Kure Eng'g Ltd., 891 F.Supp. 1020, 1032 (D.N.J.1995).

Here, the crux of Plaintiffs' Second Amended Complaint is that Meredith made a promise

not to use Plaintiffs' names in the Video that it later refused to honor, which is at its core a claim

for breach of contract.  (SAC, ¶¶ 14, 23-24, and 69-71). While Meredith disputes that this is the

agreement between the parties, it accepts Plaintiffs' pleadings for purposes of this motion.

Plaintiffs do not allege that Meredith has breached an independent duty other than its contractual

obligations. In fact, Plaintiffs' fraud and negligence-based claims mirror its breach of contract

claim.  (SAC, ¶¶ 50-52, 57, 62, 70, 77, and 82-83).  Moreover, Meredith had no duty under law

separate and apart from this agreement.  (See Section III(D), supra).  Consequently, Plaintiffs'

negligence and fraud related claims are clearly barred under the economic loss doctrine.

## IV.    **CONCLUSION**

For the above reasons, Defendants respectfully request that this Court dismiss this action

in its entirety.

Respectfully submitted,

Dated:  December 2, 2011

LAW OFFICES OF JENNIFER A. KLEAR
445 Park Avenue, 9th floor
New York, New York 10022
(212) 579-5943
jklear@klearlawfirm.com


By:  /s/
        Jennifer A. Klear, Esq.

*Attorney for Defendants*
*Meredith Corporation, Meredith*
*Video Studios, and Parents TV*